PARK REALTY COMPANY, PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 12676–79.     Filed August 13, 1981.

*James T. Mohan*, for the petitioner.
*Thomas C. Borders*, for the respondent.

EKMAN, *Judge*: Respondent determined a deficiency in petitioner's Federal income taxes for 1972 and 1975 in the amounts of $34,643 and $21,295, respectively. Due to concessions by the parties, the sole issue remaining for decision is whether payments received by petitioner from a partnership of which it was a partner constitute proceeds from the sale of

property to the partnership taxable pursuant to section 707(a)[1] or a distribution by the partnership to a partner taxable, if at all, under section 731.

## FINDINGS OF FACT

This case was submitted fully stipulated under Rule 122, Tax Court Rules of Practice and Procedure. The stipulation of facts, amendments thereto, and attached exhibits are incorporated herein by this reference.

Park Realty Co. (hereinafter petitioner) at all times relevant to this proceeding was a corporation organized under the laws of Delaware, licensed to do business in Illinois, and was engaged in the business of developing commercial and residential real estate. Petitioner timely filed its Federal corporate income tax returns for 1972 and 1975 with the Internal Revenue Service Center at Kansas City, Mo. Prior to its dissolution on February 17, 1978, petitioner had its principal place of business in Springfield, Ill.

During 1968, petitioner acquired 81.91 acres of land adjoining the right-of-way of a proposed highway near Springfield, Ill. In August 1972, a contract for construction of that highway was awarded by the State of Illinois, and during 1976, the highway was completed.

During 1971, petitioner engaged a firm to act as leasing agent and development consultant for a shopping center to be constructed on its land. Negotiations were commenced with various major department stores, and shortly thereafter, the services of an architectural firm were engaged. By fall of 1974, tentative agreements for the construction of the shopping center based on statements of intent had been reached with Sears, Roebuck & Co. (hereinafter Sears), Montgomery Ward & Co. (hereinafter Ward's), and the May Co. (hereinafter May) whereby each of the companies would purchase land from petitioner, construct its own building, and serve as an anchor store for the center. Petitioner tentatively agreed to construct an enclosed mall between the buildings. By letter dated September 12, 1974, petitioner received from an insurance

---

[1] All section references are to the Internal Revenue Code of 1954 as amended and in effect for the taxable years at issue.

company a conditional commitment for long-term financing of the shopping center in the maximum amount of $19 million.

During 1974, petitioner determined that without the assistance of another developer, it did not have the financial resources necessary to build the shopping center. Negotiations for a joint project with the consulting firm were unsuccessful, and petitioner approached a national shopping center developer headquartered in Indianapolis, Ind. Subsequently, petitioner and the Springfield Simon Co. (Simon), an Indiana limited partnership affiliated with that developer, formed a limited partnership, the White Oaks Mall Co. (the partnership), to develop the shopping center. The articles of partnership (the partnership agreement), dated December 19, 1974, and executed by petitioner on that date, were executed by Simon on March 25, 1975. The partnership agreement, under which petitioner became the sole limited partner and Simon became the sole general partner, provides in pertinent part as follows:

Article V, Section 1

* * * The term "Partnership Real Estate," as used herein, shall mean not only the land described herein, but in addition shall mean and include all shopping center buildings and other improvements constructed and erected upon said land, and all personal property situated at and used in connection with the operation of such shopping center and all rights and appurtenances thereto appertaining.

Article V, Section 2

*The Partnership Real Estate and Certain Obligations of the Partnership and the General Partner.* Upon the execution of these Articles, the Limited Partner shall cause the Partnership to become the owner of the Partnership Real Estate.

The Partnership shall reimburse the Limited Partner for all of its costs and expenses paid, advanced or incurred by it in connection with or in any way related to its predevelopment of the Partnership Real Estate as a regional shopping center. It is agreed that the amount of the reimbursement is $486,619.00, and that the total amount shall be paid to the Limited Partner upon the execution and delivery by Montgomery Ward Development Corporation, Sears Roebuck and Co. and The May Department Stores Company of that certain Construction, Operation and Reciprocal Easement Agreement, a certain Joint Site Improvement Agreement, certain Sale and Purchase Agreements, and certain Allocable Share Agreements, copies of all of which are attached hereto as Exhibits "B-1" to "B-8", inclusive. * * *

Article VII, Section 1

*Total Cash Capital.* The initial total cash capital with which this Partnership shall begin business is One Hundred Dollars ($100.00). Said cash contribution shall be made by the General Partner.

Article VII, Section 2

*Contribution of Property.* As its only contribution to the Partnership, the Limited Partner shall contribute to the Partnership its interest in the Partnership Real Estate and assign all of its rights in a first mortgage loan commitment dated November 15, 1974, from Metropolitan Life Insurance Company, when the Partnership is obligated to reimburse the Limited Partner for its predevelopment costs and expenses pursuant to Section 2 of Article V. The Partners agree that the value of the property to be contributed by Limited Partner to the Partnership shall be valued at $500,000.00 for purposes of establishing Limited Partner's capital account.

Article VII, Section 3

*Books to Reflect Capital Accounts.* A capital account reflecting the contributions made by each of the Partners shall be maintained in the books of account of the Partnership. No Partner shall receive any interest on its contributions to the capital of the Partnership.

Article XI, Section 3

*Liquidating Distributions.* Upon the dissolution and termination of the Partnership, all of its remaining assets shall be sold and liquidated at the best price available and the proceeds thereof shall be distributed,

\*　　\*　　\*　　\*　　\*　　\*　　\*

(e) fifth, $500,000.00 to the Limited Partner; and

(f) sixth, the remainder on the basis of 25% to the Limited Partner and 75% to the General Partner.

Effective as of the inception of the partnership,[2] petitioner conveyed 67.315 acres of land, the site of the proposed shopping center, to the partnership. Petitioner's cost basis in the land, exclusive of development costs, was $161,556. Development costs, in the amount of $351,575.11 incurred by petitioner prior to the transfer of the real estate to the partnership, were capitalized on its books of account. All of the development expenses related solely to the land and the development in question and did not represent assets transferable and valuable apart from the land. The amount of reimbursement by the partnership to petitioner for its development costs was arrived at by negotiation between Simon and petitioner and does not correspond to the actual costs incurred by petitioner.

Although the partnership agreement was not executed by it until March 25, 1975, Simon assumed the role of general partner on or about December 19, 1974, and exercised the general partner's powers from that time. Simultaneous with

---

[2]The record does not disclose the precise date.

Simon's execution of the partnership agreement, petitioner, Sears, Ward's, and May delivered executed copies of the documents referred to in article V, section 2, of the agreement to a bank which was acting as trustee, pursuant to the agreement.

On or about April 10, 1975, the partnership paid petitioner $445,619 of the $486,619 which petitioner had become entitled to receive under the partnership agreement. That amount was approximately equal to the money which the partnership received from Sears, Ward's, and May when they purchased the parcels of land from the partnership upon which to construct their anchor stores. Petitioner agreed, at the request of Simon, to wait until September 1, 1975, for the payment of the balance to which it was entitled. On August 29, 1975, the partnership paid petitioner $41,000.

The capital account on the partnership books at all times relevant herein reflected that petitioner had $500,000 in equity in the partnership. No adjustments were made in petitioner's capital account on the partnership books as a result of the payment of $486,619 to petitioner by the partnership. During January 1976, the following adjusting journal entries were made on the books of account of the partnership as of December 31, 1975.

Land............................................. $500,000
  Park Realty capital account ............................. $500,000
To set up cost of land donated by Park

Land............................................. 486,619
  Accounts payable (Park)................................. 486,619
To set up development costs as per contract
  (partnership agreement)

The books of account of petitioner reflect that it determined its net investment in the partnership to be $513,131.11 (land costs of $161,556 plus development expenses of $351,575.11) and that upon receipt of $486,619 from the partnership, its net investment or adjusted basis in the partnership was $26,512.11.

The partners intended petitioner's transfer of the property to be its contribution of capital to the partnership. On its 1975 Federal income tax return, petitioner did not report gain from the transfer of the property or from the receipt of $486,619

from the partnership. Respondent, in his statutory notice, determined that petitioner realized taxable income in the amount of $135,044 from "excess reimbursements" received during 1975 and explained the determination as follows:

| | |
|---|---:|
| Payment you received as reimbursement of costs and expenses related to your predevelopment of partnership (White Oaks Mall Co.) real estate ......... | $486,619 |
| Your cost or other basis, allowed............................ | 351,575 |
| Income, adjustment for excess reimbursements............ | 135,044 |

### OPINION

This case represents another step in our exegesis of the often-arcane provisions of subchapter K articulated in *Otey v. Commissioner*, 70 T.C. 312 (1978), affd. per curiam 634 F.2d 1046 (6th Cir. 1980), and more recently continued in *Barenholtz v. Commissioner*, 77 T.C. 85 (1981). In those cases we explored, inter alia, the line of demarcation between section 707(a) and sections 721 and 731 in situations where a partner transfers property to a partnership.

At the time the drafters of subchapter K were seeking to clarify the tax treatment of partners and partnerships, they recognized that "when a partner sells property to the partnership the problem arises whether the transaction is to be treated in the same manner as though the partner were an outsider dealing with the partnership (the "entity" approach)."[3] Embodied as section 707,[4] the entity approach was adopted "Because of its simplicity of operation."[5]

At the same time, the existing tax treatment of contributions to a partnership was retained[6] and codified as section 721(a)[7] which states the general rule that a partner recognizes no gain or loss as a result of a contribution of property to a

---

[3]See H. Rept. 1337, to accompany H.R. 8300 (Pub. L. 591), 83d Cong., 2d Sess. 65 (1954); S. Rept. 1622, to accompany H.R. 8300 (Pub. L. 591), 83d Cong., 2d Sess. 89 (1954).

[4]Sec. 707(a) provides:

(a) PARTNER NOT ACTING IN CAPACITY AS PARTNER.—If a partner engages in a transaction with a partnership other than in his capacity as a member of such partnership, the transaction shall, except as otherwise provided in this section, be considered as occurring between the partnership and one who is not a partner.

[5]H. Rept. 1337, *supra* at 67.

[6]H. Rept. 1337, *supra* at 68.

[7]Sec. 721(a) provides:

(a) GENERAL RULE.—No gain or loss shall be recognized to a partnership or to any of its

partnership in exchange for a partnership interest. Likewise, the tax treatment of distributions by a partnership, governed by section 731(a),[8] was intended to be determined in a simple and uniform way[9] whereby gain is not recognized to a partner except to the extent any money distributed exceeds the partner's basis in the partnership.

The issue presented herein arises from the sharply divergent tax consequences flowing from those alternative methods of characterizing, for income tax purposes, a transfer of property by a partner to a partnership. The regulations promulgated under those Code sections caution that the "substance of the transaction will govern rather than its form"[10] and will determine whether the tax consequences of a transaction will be determined under section 707 rather than sections 721 and 731.[11]

---

partners in the case of a contribution of property to the partnership in exchange for an interest in the partnership.

[8]Sec. 731(a) provides:

(a) PARTNERS.—In the case of a distribution by a partnership to a partner—

(1) gain shall not be recognized to such partner, except to the extent that any money distributed exceeds the adjusted basis of such partner's interest in the partnership immediately before the distribution, and

(2) loss shall not be recognized to such partner, except that upon, a distribution in liquidation of a partner's interest in a partnership where no property other than that described in subparagraph (A) or (B) is distributed to such partner, loss shall be recognized to the extent of the excess of the adjusted basis of such partner's interest in the partnership over the sum of—

(A) any money distributed, and

(B) the basis to the distributee, as determined under section 732, of any unrealized receivables (as defined in section 751(c)) and inventory (as defined in section 751(d)(2)). Any gain or loss recognized under this subsection shall be considered as gain or loss from the sale or exchange of the partnership interest of the distributee partner.

[9]H. Rept. 1337, *supra* at 68.

[10]See sec. 1.707–1(a), Income Tax Regs.; sec. 1.721–1(a), Income Tax Regs.

[11]Sec. 1.721–1(a), Income Tax Regs., provides in part:

(a) * * * Section 721 shall not apply to a transaction between a partnership and a partner not acting in his capacity as a partner since such a transaction is governed by section 707. Rather than contributing property to a partnership, a partner may sell property to the partnership or may retain the ownership of property and allow the partnership to use it. * * * Thus, if the transfer of property by the partner to the partnership results in the receipt by the partner of money or other consideration, including a promissory obligation fixed in amount and time for payment, the transaction will be treated as a sale or exchange under section 707 rather than as a contribution under section 721. * * *

Sec. 1.731–1(c)(3), Income Tax Regs., provides in part:

(3) If there is a contribution of property to a partnership and within a short period:

(i) Before or after such contribution other property is distributed to the contributing partner and the contributed property is retained by the partnership, or

(ii) After such contribution the contributed property is distributed to another partner,

Respondent contends, here, that two distinct transactions occurred between petitioner and the partnership. First, the transfer of the land plus the loan commitment was a contribution to the capital of the partnership with an agreed value of $500,000. Respondent does not contend that any gain must be recognized by petitioner due to this capital contribution. The second transaction, argues respondent, was a transfer of the development costs and expenses to the partnership, which transfer constitutes a sale by petitioner to the partnership. Respondent contends that the payments received in excess of petitioner's basis of $351,575 in the development costs were income to petitioner.

Petitioner contends that its transfer of land to the partnership was its contribution of property to the partnership and that, pursuant to section 721(a), no gain or loss is recognized on the transfer. Moreover, petitioner contends that the payments made to it by the partnership pursuant to the partnership agreement after the occurrence of certain events upon which the payments were contingent, constitute distributions to petitioner which, under section 731(a), are taxable only to the extent the payments exceed its basis in the partnership. Petitioner argues that inasmuch as, at the time of the distribution, its basis in the partnership, $513,131.11, exceeded the total amount of the distributions, no gain is to be recognized by it as a result of the distribution.

Respondent relies primarily on the partnership agreement as support for his determination that petitioner "sold" its development costs to the partnership. He argues that, both in form and in substance, the transaction at issue is taxable under section 707.

Petitioner argues that respondent garners no support from the terms of the partnership agreement for his bifurcation of the transaction and contends that the development costs may not be separated from the land which was contributed to the partnership in exchange for its interest in the partnership. By the clear terms of the partnership agreement, petitioner was

---

such distribution may not fall within the scope of section 731. Section 731 does not apply to a distribution of property, if, in fact, the distribution was made in order to effect an exchange of property between two or more of the partners or between the partnership and a partner. Such a transaction shall be treated as an exchange of property.

to be paid $486,619, contingent upon the execution of binding arrangements with Sears, Ward's, and May, and according to petitioner, its right to the payment of $486,619 arose upon the occurrence of those contingent events and not upon the transfer of the land to the partnership.

Alternatively, petitioner argues that if the transaction involved herein is characterized as a sale of property by petitioner to the partnership, the property sold was the land inasmuch as the parties have stipulated that the development costs do not constitute an asset valuable or transferable apart from the land. Petitioner contends that since its basis in the land at the time of the transfer was in excess of the payments received from the partnership, application of section 707 would result in a deductible loss.[12]

Petitioner relies on *Otey v. Commissioner, supra,* as support for its contention that the payments in question constitute distributions within the purview of section 731. Respondent contends that *Otey* was incorrectly decided and asks that we reconsider our holding in that case. In the alternative, respondent argues that the facts in the instant case are distinguishable from those in *Otey.* We remain convinced that our analysis in *Otey* is correct, and while we agree that the facts in that case differ materially from those presented herein, we feel that a similar analysis is helpful in determining the tax consequences of the transaction at issue.

The starting point for our determination is the form of the transaction. *Otey v. Commissioner, supra* at 319–320. Here, the form of the transaction is a contribution of petitioner's entire interest in the property to the capital of the partnership, not a sale of a portion of that interest, i.e., the predevelopment costs. Respondent focuses his, and seeks to confine our, attention to that portion of the partnership agreement whereby petitioner received $486,619 as reimbursement for "all of its costs and expenses paid, advanced or incurred by it in connection with or in any way related to its predevelopment of the Partnership Real Estate as a regional shopping center." With this language as his foundation, respondent seeks to construct his argument

---

[12]The prohibitions concerning the deductibility of losses on sales or exchanges with respect to controlled partnerships are inapplicable due to the amount of petitioner's ownership interest in the partnership which was 25 percent. See sec. 707.

that "reimbursement" for the costs actually means "in exchange for" the rights to those costs. We find this argument less than persuasive. Respondent's interpretation of the language contained in the partnership agreement is, to say the least, strained and, moreover, is contrary to the weight of the evidence presented. Assuming arguendo that the development costs are an asset which might be sold by petitioner, the parties stipulated that the predevelopment costs do not "represent assets transferable or valuable apart from the land and or development" and the record is devoid of any indication that the parties to the partnership agreement viewed the reimbursement as a payment for the right to the predevelopment costs.[13] Petitioner was obligated under article V, section 2, of the agreement to "cause the partnership to become the owner of the real estate" which included all rights petitioner had to any enhancement in value due to the expenditures.

In determining the proper treatment to be accorded the transactions in *Otey* and *Barenholtz*, we reviewed the facts presented to decide whether the substance of the respective transfers was in accord with their form. In *Otey*, we concluded that the factual pattern did not resemble a disguised sale of the land to the partnership as contended by respondent but rather conformed to the framework of a contribution of property by the partner, which was the form in which the transaction was cast by the parties. In *Barenholtz*, the taxpayer contended that the substance of the transaction was not that of a sale of property to his partners followed by a contribution by them to the partnership, but once again we concluded that the substance of the transaction was, in keeping with its form, a sale. Our review of the facts in the instant case persuades us that here the substance of the transaction is in keeping with the form employed and that a contribution, rather than a sale, took place.

Petitioner purchased land suitable for development of a shopping center, expended substantial amounts in order to further the project, and negotiated tentative agreements with Sears, Ward's, and May to serve as anchor stores for the

---

[13]Respondent determined that the excess amount received by petitioner over its basis was ordinary income, but has nowhere explained the basis for this determination if, as he urges, the transaction was a sale of what must be viewed as a capital asset.

development. Upon realizing that its resources were insufficient, petitioner formed a partnership to complete the development and conveyed to the partnership its entire interest in the property (including any enhancement in value resulting from the development costs it incurred). Clearly, the consummation of binding agreements with Sears, Ward's, and May was viewed as beneficial to the partnership and, pursuant to the partnership agreement, contingent upon execution of agreements by Sears, Ward's, and May, petitioner would be entitled to be paid $486,619 as reimbursement for its development costs. Inasmuch as the execution of the agreements directly served the interests of the partnership and petitioner as a partner, we find enormous difficulty in agreeing with respondent that petitioner engaged in the transaction at issue in any capacity other than that of a member of the partnership. See *Otey v. Commissioner, supra* at 320.

In short, considering all of the evidence presented, we cannot agree with respondent's determination that the transaction should be recharacterized as a sale by petitioner of his predevelopment costs. Petitioner's conveyance of his entire interest in the land was a contribution of property to a partnership in exchange for an interest in the partnership, sec. 721, and we therefore find the payments by the partnership to petitioner to be distributions within the purview of section 731.

Due to concessions by the parties,

*Decision will be entered under Rule 155.*