**John H. OTEY, Jr. and Bettye G. Otey, Appellees,**

v.

**COMMISSIONER OF INTERNAL REVENUE, Appellant.**

**No. 79–1183.**

United States Court of Appeals, Sixth Circuit.

Argued Oct. 21, 1980.

Decided Nov. 25, 1980.

M. Carr Ferguson, Asst. Atty. Gen., Gilbert Andrews, Crombid J. D. Garrett, James A. Riedy, Tax Division, U. S. Dept. of Justice, Washington, D. C., Stuart E. Seigel, Chief Counsel, Internal Revenue Service, Washington, D. C., for appellant.

Ervin M. Entrekin, Butler, Tune & Entrekin, Mark H. Westlake, Nashville, Tenn., for appellees.

Before WEICK, LIVELY and KENNEDY, Circuit Judges.

PER CURIAM.

The question in this case is whether the transfer of real estate by a partner, John H. Otey, Jr., to a partnership in which he had a 50% interest, Court Villa Apartments, was a sale or a contribution of capital. The Tax Court held that the transaction effected a contribution of capital, and the Commissioner appeals.

The facts surrounding the transaction were stipulated as follows:

On October 19, 1971, Petitioner (Otey) and Marion Thurman entered into a Joint Venture Agreement for the purpose of developing a 221(d)(4) residential apartment project at 2612–14 Heiman Street, Nashville, Tennessee.

In January 1963, Petitioner acquired property at 2612–14 Heiman Street by inheritance from their (sic) uncle. The federal estate tax return for the deceased uncle reflected a fair market value for the property of $18,500.00.

On December 30, 1971, Petitioner and his wife transferred title at 2612–14 Heiman Street to the Court Villa Apartments, a Joint Venture composed of Marion Thurman and John H. Otey, Jr.

On January 11, 1972, the Third National Bank closed its construction loan to the Court Villa Apartments in the amount of $870,300.00. The note evidencing the loan was executed by Court Villa Apartments, a Joint Venture, by Marion Thurman and by John H. Otey, Jr., and was secured by a Deed of Trust on the property at 2612–14 Heiman Street.

On January 11, 1972, the date on which the partnership made its first significant draw on the construction loan, it issued a check to John Otey for $32,500. Between that date and June 13, 1972, simultaneously with partnership draws on the construction loan, Otey was paid an additional $32,250 by the partnership in three disbursements. At the time of these payments to Otey the partnership had earned no income. These payments to Otey were made pursuant to a provision of the partnership agreement:

John H. Otey, Jr. has contributed the land to the Joint Venture and the parties agree that the said Otey shall draw the first Sixty Five Thousand ($65,000) Dollars of the loan proceeds from the Joint Venture as soon as the loan closes.

The agreement also provided that profits and losses would be shared equally and that withdrawals and distributions were to be made equally to the two partners after the first $65,000 of loan proceeds was paid to Otey. Thurman contributed no cash or other assets to the partnership. The Tax Court found that his contribution was his ability to get financing for the venture. The permanent loan was to be FHA insured and it was required that the partnership own real estate upon which the apartments were to be built.

The Tax Court also made the following finding of fact:

The partners intended that petitioner's transfer of the Heiman Street property to the partnership was a contribution to the capital of the partnership and not a sale of the property to the partnership. On receipt of the $64,750 [3] cash from the partnership in 1972, petitioner reduced his basis in his capital in the partnership. Since his basis, consisting of his $18,500 basis in the land contributed plus his liability for one–half of the borrowed construction money, exceeded the money distributed to him, he reported no income from his transaction on his 1972 return.

[3] The joint venture agreement provided that the partnership would pay petitioner $65,000; in fact he received only $64,750. The parties agree that the $250 difference is not material.

The Commissioner relied upon section 707(a) of the Internal Revenue Code, 26 U.S.C. § 707(a), which provides that "if a partner engages in a transaction with a partnership other than in his capacity as a member of the partnership the transaction shall ... be considered as occurring between the partnership and one who is not a partner ...." The Commissioner also contended that § 1.707–1(a) of the Income Tax Regulations–"in all cases, the substance of the transaction will govern rather than its form"–requires the transaction between Otey and the partnership to be treated as a sale rather than a contribution of capital. On the other hand, Otey maintained that the transaction is governed by two different sections of the Code. He relied on Code section 721, 26 U.S.C. § 721–"No gain or loss shall be recognized ... in the case of a contribution of property to the partnership in exchange for an interest in the partnership" and section 731(a), 26 U.S.C. § 731(a)–"in the case of a distribution by a partnership to a partner ... gain shall not be recognized to such partner, except to the extent any money distributed exceeds the adjusted basis of such partner's interest in the partnership immediately before the distribution ...." The Commissioner replied to this argument by citing § 1.731–1(c)(3)(i) of the Income Tax Regulations–"If there is a contribution of property to a partnership and within a short period ... [b]efore or after such contribution other property is distributed to the contributing partner and the contributed property is retained by the partnership ... such distribution may not fall within the scope of section 731."

After considering the provisions of the Code and Regulations cited by the parties and several of its own decisions dealing with somewhat similar transactions, the Tax Court found that "[t]he form of the transaction was a contribution to capital rather than a sale, and there are no elements of artificiality in the form selected ...." It further found that the partnership would have had no assets and no business without the transfer of the real estate. Thus, "[t]he property had to be in the partnership to make the borrowing possible."

Since the real estate was the only contributed capital of the partnership at the time of the loan, the Tax Court concluded that the transaction should not be treated as one in which Otey acted in any capacity other than a partner.

Payment to Otey of the value of the real estate was contingent upon the partnership's receiving the loan. Moreover, as the Tax Court pointed out, Otey remained liable for the entire borrowing of the partnership and might be required to repay much more as a partner than the $64,750 he received from the partnership. The Tax Court refused to adopt a rule that an agreement for preferential distribution out of borrowed funds to restore capital accounts to equality after non–pro rata partnership contributions necessarily leads to the conclusion that such contributions in reality are sales.

Upon consideration of the record on appeal, together with the briefs and oral arguments of counsel, the court concludes that the Tax Court did not err in its findings of fact or in its application of the Code and Regulations.

The decision of the Tax Court is affirmed.