JONAS BARENHOLTZ AND AUBREY BARENHOLTZ, PETITIONERS
*v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 12250–78.     Filed July 23, 1981.

*Charles E. Zumkehr*, for the petitioners.
*Jack E. Prestrud*, for the respondent.

EKMAN, *Judge*: Respondent determined deficiencies in petitioners' Federal income taxes for 1972 and 1973 in the amounts of $125,887.33 and $17,389.20, respectively.

Due to concessions by petitioners, the sole issue for decision is whether amounts received by petitioner Jonas Barenholtz were distributions by a partnership to a partner taxable pursuant to section 731 or proceeds from the sale of 75 percent of petitioners' interest in two apartment buildings.

### FINDINGS OF FACT

Some of the facts have been stipulated by the parties and are found accordingly. The stipulation of facts and attached exhibits are incorporated herein by this reference.

Petitioners, husband and wife, who resided in Akron, Ohio, at the time the petition herein was filed, timely filed their joint Federal income tax returns for the years 1972 and 1973 with the Internal Revenue Service Center in Cincinnati, Ohio.

Jonas Barenholtz (hereinafter petitioner) is a real estate developer. On May 30, 1972, petitioner and three other individuals executed an agreement concerning two apartment buildings owned by petitioner and known as Fir Hill Towers South (hereinafter South) and Fir Hill Towers North (hereinafter North). The agreement, which was drafted by one of the other parties and refers to petitioner as seller and the others as purchasers, provides in part:

Seller is desirous of selling a Seventy-Five Percent (75%) interest in said Real Estate and Purchasers are desirous of purchasing the same, and to

ultimately form a partnership in which Purchasers will own a Seventy-Five Percent (75%) interest and Seller will own a Twenty-Five Percent (25%) interest, all upon the terms and conditions hereinafter set forth;

Pursuant to the agreement, which recites the terms for the sale and provides that title shall be conveyed "to Purchasers or their nominee," the purchasers paid to an escrow agent $375,000 for 75 percent of petitioner's interest in South and $300,000 for 75 percent of his interest in North.

During June 1972, petitioner and the same individuals entered into a partnership agreement whereby the SKLB partnership (hereinafter SKLB) was to be formed as of July 1, 1972, to engage in the real estate business. According to the partnership agreement, the capital contributions of the partners are to be in property, and profits and losses are to be shared equally.

By means of a deed executed by petitioner and filed by the escrow agent on June 30, 1972, South was transferred to the partnership and on September 29, 1972, North was transferred in the same manner. Proration of costs incident to the sale among the seller and purchasers was accomplished by the escrow agent and disbursements necessary to reflect the prorated items were made by the escrow agent directly to the individual purchasers. Petitioner received payments from the escrow agent for South on July 3, 1972, and for North on September 29, 1972.

In compliance with an Ohio statutory requirement, on June 29, 1972, a certificate of partnership was filed for SKLB. The certificate states, inter alia, that the capital contribution of petitioner and each of his three partners is an "undivided ¼th interest in Fir Hill Towers South, Akron, Ohio."

On petitioners' 1972 Federal income tax return, the transfers of South and North are reflected as taxable sales of three-fourths of petitioners' interest in those properties.[1]

## OPINION

The question presented herein arises due to the alternative methods provided in subchapter K of analyzing a transfer of

---

[1]Respondent determined that the amount of gain which must be recognized by petitioners had been incorrectly reported and recomputed petitioners' income. The accuracy of respondent's computations is not disputed by petitioners.

property to a partnership by a partner and the sharply divergent tax consequences flowing from each. Pursuant to section 721(a), no gain or loss is recognized by a partner or the partnership when property is contributed to the partnership in exchange for a partnership interest.[2] Subject to exceptions not relevant herein, in the case of a distribution by a partnership to a partner, gain is recognized by the partner only to the extent that money distributed exceeds the partner's adjusted basis in the partnership. Sec. 731.[3] However, the drafters of subchapter K recognized that partners do not always deal with partnerships in their capacity as partners and provided that in such cases, the transactions are to be treated as occurring between the partnership and one who is not a partner. Sec. 707(a).[4]

In *Otey v. Commissioner*, 70 T.C. 312 (1978), affd. per curiam 634 F.2d 1046 (6th Cir. 1980), we considered whether a transfer of property by a partner to his partnership should be viewed as a contribution under sections 721 and 731 or as a sale of

---

[2]Sec. 721(a) provides:

(a) GENERAL RULE.—No gain or loss shall be recognized to a partnership or to any of its partners in the case of a contribution of property to the partnership in exchange for an interest in the partnership.

[3]Sec. 731 provides:

(a) PARTNERS.—In the case of a distribution by a partnership to a partner—

(1) gain shall not be recognized to such partner, except to the extent that any money distributed exceeds the adjusted basis of such partner's interest in the partnership immediately before the distribution, and

(2) loss shall not be recognized to such partner, except that upon, a distribution in liquidation of a partner's interest in a partnership where no property other than that described in subparagraph (A) or (B) is distributed to such partner, loss shall be recognized to the extent of the excess of the adjusted basis of such partner's interest in the partnership over the sum of—

(A) any money distributed, and

(B) the basis to the distributee, as determined under section 732, of any unrealized receivables (as defined in section 751(c)) and inventory (as defined in section 751(d)(2)).

Any gain or loss recognized under this subsection shall be considered as gain or loss from the sale or exchange of the partnership interest of the distributee partner.

(b) PARTNERSHIPS.—No gain or loss shall be recognized to a partnership on a distribution to a partner of property, including money.

(c) EXCEPTIONS.—This section shall not apply to the extent otherwise provided by section 736 (relating to payments to a retiring partner or a deceased partner's successor in interest) and section 751 (relating to unrealized receivables and inventory items).

[4]Sec. 707(a) provides:

(a) PARTNER NOT ACTING IN CAPACITY AS PARTNER.—If a partner engages in a transaction with a partnership other than in his capacity as a member of such partnership, the transaction shall, except as otherwise provided in this section, be considered as occurring between the partnership and one who is not a partner.

property to the partnership by a partner not acting in the capacity of a partner within the meaning of section 707(a). We reviewed the relevant cases and noted one commentator's view on the issue as follows:

> Willis argues that partners in effect may choose between coming within section 707 or section 721 by the choice they make between substantively identical methods of capitalizing their partnership. He does not construe the "substance of the transaction" language of regulation section 1.707–1(a) as authorizing respondent to recharacterize a transaction which is formally a sale, even if it is merely a method chosen for capitalizing the partnership, in the absence of an attempted end run around section 1031's limitations. 1 A. Willis, Partnership Taxation, secs. 14.08 and 33.07 (2d ed. 1976). [*Otey v. Commissioner, supra* at 319.]

Willis points out that the capitalization of a partnership may be accomplished in a number of ways, each with different tax consequences. Among these is the sale by one individual to his partner of an undivided partial interest in property followed by a contribution of the property by both to the partnership. Willis concludes that this is a method of capitalizing a partnership which is viable within the flexible framework of subchapter K. 1 A. Willis, Partnership Taxation, sec. 14.09 (2d ed. 1976).

Petitioner contends that his conveyance of South and North was not a sale of any part of his interest in those properties and argues that he contributed his entire interest in South and North to the capital of SKLB and that his partners contributed cash. In exchange for their capital contributions, each partner received a 25-percent interest in the partnership and in order to equalize the capital accounts of the partners, petitioner received cash from SKLB. Petitioner contends that pursuant to section 721, no gain is recognized to the partnership or to him due to his contribution to capital and relies on section 731 for the proposition that the gain which he must recognize due to the distribution of cash by the partnership is limited to the amount by which the money received exceeds his basis in the partnership.

Respondent contends that, pursuant to the clear terms of the agreement, petitioner sold 75 percent of his interest in both South and North and, consequently, that petitioner must recognize gain to the extent that the proceeds of the sale exceed his basis in such interest. Alternatively, respondent contends that even if the transaction occurred as character-

ized by petitioner, section 721 and section 731 are inapplicable inasmuch as the transaction must be considered as occurring between the partnership and one who is not a partner pursuant to section 707(a). We agree with respondent's primary contention.

According to petitioner, the agreement concerning the transfer of South and North inaccurately refers to petitioner as seller and the other individuals as purchasers and, regardless of the implication engendered by the use of those terms, the form of the transaction was that of a contribution of capital to the. partnership, not a sale of 75 percent of petitioner's interest in South and North. However, we find that the form of the transaction, as evidenced by the agreement dated May 30, 1972, the partnership certificate, the proration of costs by the escrow agent, and the manner in which petitioner received the purchase payments, clearly was that of a sale of 75 percent of petitioner's interest in South and North. Our conclusion is further buttressed by the fact that the obligation to pay petitioner for his interest in South and North was assumed solely by the individuals executing the agreement, and not by the partnership.

Alternatively, petitioner argues that regardless of the form evidenced by the agreement, the substance of the transaction whereby he conveyed his interest in South and North was that of a contribution of capital to the partnership. As factual support for his contention, petitioner relies on the formation of the partnership immediately prior to the transfer of South, the transfer of both South and North directly to the partnership, and the fact that the accounting records of the partnership fail to reflect ownership of South and North by anyone except petitioner and the partnership.

On the basis of the evidence presented, we think that petitioner and the three individuals who became his partners in SKLB fully intended from the outset to form a partnership for the operation of South and North in which each would own an equal partnership interest. In order to do so, however, it was necessary to equalize the capital accounts of the partners. We think that there were at least three methods, each with different tax consequences, whereby such a capitalization of the partnership might have been accomplished. First, petition-

er could have sold South and North to the partnership in a transaction within the purview of section 707(a).[5] Second, petitioner could have contributed the property to the partnership pursuant to section 721 and the capital accounts of the partners could have been equalized by distributions within the purview of section 731.[6] Third, petitioner could have sold an undivided one-fourth interest in the property to each of his partners followed by a contribution of the property to the partnership by the partners. We find that the capitalization of SKLB was effected by this third method.

In order to facilitate the formation of the partnership, petitioner agreed to sell an undivided one-fourth interest in South and North to each of three prospective partners. Through payments in cash to an escrow agent, those prospective partners complied with the terms of the sales agreement. Petitioner, who had agreed to execute deeds vesting title in the purchasers or their nominees, delivered deeds to the escrow agent whereby both South and North would be conveyed directly to the partnership. Upon satisfaction of all of the terms of the agreement, the escrow agent recorded the deeds and paid petitioner the agreed purchase price. In so doing, the escrow agent performed on behalf of petitioner and his partners, not on behalf of the partnership. We find the form of the transaction, a sale by petitioner of 75 percent of his interest in the property to three individuals, to be in accord with its substance.

One objective sought in enacting the broad framework of partnership taxation codified in subchapter K was to provide flexibility[7] as to the methods by which partners form a partnership. However, that flexibility is not unlimited and the

---

[5]See *Davis v. Commissioner*, T.C. Memo 1970–170.

[6]This method is, of course, that which petitioner argues was utilized. Inasmuch as we agree with respondent's contention that petitioner sold an undivided one-fourth interest in the property to each of his partners, we need not reach the question of what the tax consequences of the transaction as envisaged by petitioner would be. However, were we to reach that question, of significance would be the fact that petitioner received the payments in question directly from his partners, albeit through an escrow agent. See *Otey v. Commissioner*, 70 T.C. 312, 321 (1978), affd. per curiam 634 F.2d 1046 (6th Cir. 1980); see also secs. 1.721–1(a), 1.731–1(c)(3), Income Tax Regs.

[7]See H. Rept. 1337, to accompany H.R. 8300 (Pub. L. 591), 83d Cong., 2d Sess. 65 (1954); S. Rept. 1622, to accompany H.R. 8300 (Pub. L. 591), 83d Cong., 2d Sess. 89 (1954); *Foxman v. Commissioner*, 41 T.C. 535, 550–551 (1964), affd. 352 F.2d 466 (3d Cir. 1965).

law does not stretch so far as to allow retroactive second guesses. Where, as here, the parties have employed the sale method to achieve their objective, a partner cannot avoid the tax consequences flowing from that method by a hindsight application of principles advantageous to him.[8] See *Foxman v. Commissioner*, 352 F.2d 466, 469 (3d Cir. 1965), affg. 41 T.C. 535 (1964).

*Decision will be entered for the respondent.*

---

[8]Or, as more felicitously phrased by the poet:

"For of all sad words of tongue or pen,
The saddest are these: "It might have been!'"

*—John Greenleaf Whittier*

MAUD MULLER, *Stanza 53* (1856)