UWE SCHMIDT and HELGA I. M. SCHMIDT, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent; JOHN LOUIS GIUSTI and SIRA JOAN GIUSTI, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Schmidt v. Commissioner
Docket Nos. 17460-79, 274-80.
United States Tax Court
T.C. Memo 1983-612; 1983 Tax Ct. Memo LEXIS 170; 46 T.C.M. (CCH) 1586; T.C.M. (RIA) 83612; September 28, 1983. Uwe Schmidt and John Louis Giusti, pro se. Benjamin A. de Luna, for the respondent. WILES
MEMORANDUM FINDINGS OF FACT AND OPINION WILES, Judge: In these consolidated *171 cases, respondent determined the following deficiencies in petitioners' Federal income taxes: Year
Deficiency
Uwe Schmidt and Helga I. M. Schmidt
1973
$2,369.09
1974
9,196.51
1975
2,128.00
1976
[1] 1,756.00
John Louis Giusti and
Sira Joan Giusti
1973
1,106.12
1974
10,111.40
1975
2,321.42
The sole issue for decision is whether the petitioners, as partners of Springs Associates, are entitled to deduct the cost overruns incurred by that partnership in the construction of an apartment complex as ordinary and necessary business expenses under section 162. [2]
*172 FINDINGS OF FACT Some of the facts have been stipulated and are found accordingly. Petitioners, Uwe Schmidt (hereinafter Mr. Schmidt) and Helga I. M. Schmidt, husband and wife, and petitioners, John Louis Giusti (hereinafter Mr. Giusti) and Sira Joan Giusti, husband and wife, resided in Colorado Springs, Colorado, when they filed their petitions in this case. Petitioners, Uwe Schmidt and Helga I. M. Schmidt timely filed joint Federal income tax returns for the years 1973, 1974, 1975, and 1976 with the Internal Revenue Service Center at Ogden, Utah, and petitioners, John Louis Giusti and Sira Joan Giusti also timely filed joint Federal income tax returns for the years 1973, 1974, and 1975 with the Internal Revenue Service Center at Ogden, Utah. Mr. Schmidt and Mr. Giusti along with Robert M. Smith, Clifford J. Buckley, and Earl M. Walth, executed a partnership agreement creating Springs Associates, on February 15, 1972. Springs Associates was organized to acquire and to hold for investment purposes a certain tract of real estate located in Santa Fe, New Mexico (hereinafter the New Mexico property), and to cause improvements to be constructed by the partnership upon the property. *173 The partners intended to have a 152-unit apartment complex constructed upon the New Mexico property (hereinafter sometimes referred to as the complex or project). Spring Associates lacked the capital necessary to have such a project built. In order to secure financing for construction, Springs Associates, along with Gerald W. Bennett, Archibald G. Barron, and W. Wayne Johnson (hereinafter these three individuals are referred to as investing partners) executed a second partnership agreement creating St. Michael's Associates (hereinafter St. Michaels) on March 1, 1972. The partnership agreement provided that St. Michaels was organized to acquire or lease the New Mexico property, and to obtain financing for, and to construct thereon, or arrange for construction thereon, an apartment housing complex containing 152 units. The investing partners received a 25 percent interest in St. Michaels in exchange for a total cash contribution of $92,750. Springs Associates received 75 percent interest in St. Michaels in exchange for an initial capital contribution of $139,125 and an additional required capital contribution in the same amount. In satisfaction of its total capital contribution *174 obligation, Springs Associates obtained and contributed to St. Michaels a land lease to the New Mexico property. St. Michaels secured a construction loan to finance the construction of the apartment complex. St. Michaels partnership agreement provided that Springs Associates would construct or cause to be constructed on the property an apartment complex containing, in one or more buildings, a total of 152 apartment units for a fixed, guaranteed price of $2,366,000. The partners of Springs Associates, with the exception of Mr. Smith, were employed by Godwin Bevers, a general contractor. They intended to make a 7 percent profit on the construction of the apartment complex by having Godwin Bevers build the project at less than the guaranteed price. Godwin Bevers went bankrupt before it began construction, and Springs Associates located another general contractor in Albuquerque, New Mexico, who agreed to construct the apartment complex on a cost/plus basis. The construction costs exceeded the guaranteed price of $2,366,000 in the following amounts for the following years; [3]
Year
Amount
1973
$58,802
1974
91,597
1975
36,971
*175 Springs Associates absorbed the entire cost of the overruns by borrowing money and selling partnership interests. Neither Springs Associates nor its partners received any additional interest in St. Michaels for financing the cost overruns of the project, and St. Michaels' investing partners did not contribute towards the cost overruns. Springs Associates did not build, cause to be constructed, or guarantee the cost of any other structure before, during or after the years in question. Springs Associates filed partnership returns with the Internal Revenue Service Center in Ogden, Utah, for the years 1973, 1974, and 1975. On those returns, the partnership claimed a current deduction for the cost overruns. Petitioners deducted their distributive share of those expenses on their personal returns. In the notice of deficiency, respondent determined that the partnership was not entitled to a current deduction for the cost overruns. OPINION We must determine whether Mr. Schmidt and Mr. Giusti, as partners of Springs Associates, are entitled to deduct the cost overruns incurred by Springs Associates in constructing the apartment complex, on their 1973, 1974, and 1975 Federal income *176 tax returns. It is respondent's position that the construction cost overruns were nondeductible capital contributions to St. Michaels. Alternatively, respondent contends that the cost overruns were not deductible business expenses under section 162 because Springs Associates was not engaged in a trade or business during the years 1973, 1974, and 1975. Petitioners, on the other hand, argue that the cost overruns were not capital contributions to St. Michaels, rather, they were an ordinary and necessary business expense incurred by the partnership, Springs Associates. In support of respondent's first position, he argues, on brief, that the construction cost overruns constitute capital contributions from Springs Associates to St. Michaels. For the reasons set forth below we disagree. The determination of whether a transfer of property is a capital contribution is a question of fact. See Otey v. Commissioner,70 T.C. 312 (1978), affd. 634 F. 2d 1046 (6th Cir. 1980); see also sec. 1.721-1(a), Income Tax Regs. We begin our analysis *177 by examination of St. Michaels partnership agreement. It provides that Springs Associates is required to make a total capital contribution of $278,250; payable in two equal installments of $139,125. No other capital contribution was required from Springs Associates, and the parties have stipulated that Springs Associates satisfied its total capital contribution requirement by obtaining and transferring to St. Michaels a lease to the New Mexico property, upon which the apartment complex was subsequently built. It is clear the parties intended that Springs Associates' obligation to have the apartment complex constructed at a fixed price was separate and distinct from its required capital contribution, and it was treated as such by both St. Michaels and Springs Associates. St. Michaels held the lease for the property and secured the financing to build the apartment complex. It looked exclusively to Springs Associates for construction of the project at a fixed, guaranteed cost. In guaranteeing the price, Springs Associates assumed a risk of loss; the partners, however, had a bona fide expectation of profit on the transaction. Mr. Schmidt and Mr. Giusti were in the construction *178 business, employed by the same general contractor, Godwin Bevers. They anticipated that Godwin Bevers could build the apartment complex at a price less than that quoted to St. Michaels, thereby giving Springs Associates a 7 percent profit on the transaction. Unfortunately for the partners of Springs Associates, Godwin Bevers went bankrupt before construction began, and they were forced to locate another contract to do the work. A general contractor in Albuquerque, New Mexico, agreed to construct the complex on a cost/plus basis. This resulted in the construction cost exceeding the guaranteed price by $58,802 during 1973, $91,297 during 1974, and $36,971 during 1975. [4] Thus, Springs Associates incurred an overall loss of $187,070 on construction of the apartment complex. The entire loss was borne by Springs Associates by borrowing money and selling additional partnership interests. Neither Springs Associates nor its partners received an increased interest in St. Michaels to reflect the additional out-of-pocket expenses incurred in building the apartment complex. Moreover, the investing partners of St. Michaels did not contribute any additional capital to help defray the construction *179 overruns. With respect to its obligation to have the apartment complex constructed at a fixed price, we find that Springs Associates was not acting in its capacity as a partner of St. Michaels. Therefore, with respect to that obligation, Springs Associates shall be treated as if it's not a partner in St. Michaels. [5] Accordingly, we hold that the cost overruns incurred by Springs Associates were not additional capital contributions to St. Michaels. *180 We now turn to respondent's alternative contention, that the cost overruns are not deductible business expenses because Springs Associates was not engaged in the trade or business during 1973, 1974, and 1975. For the reasons set forth below, we agree with respondent. Generally, a partnership is allowed a deduction under section 162 for "all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business * * *." Since there is no dispute that the costs were ordinary or necessary, entitlement to a section 162 deduction will turn on whether Springs Associates was carrying on a trade or business during the years in question. This is a factual issue and petitioners bear the burden of proof. See Welch v. Helvering,290 U.S. 111 (1933); Rule 142. Neither the Internal Revenue Code nor any court decision contains an explicit definition of what constitutes carrying on a trade or business. This Court has recently held, however, that *181 facts and circumstances of each case must be examined to determine whether an activity is considered to be carrying on a trade or business. Ditunno v. Commissioner,80 T.C. 362 (1983), on appeal (6th Cir., July 29, 1983). In order for a partnership to be entitled to a deduction attributable to a trade or business, petitioner must establish that the partnership engaged in the activity for the primary purpose of making a profit. See Brannen v. Commissioner,78 T.C. 471, 505 (1982). While we are persuaded that Springs Associates intended to make a profit on this transaction, petitioners have not convinced us that the partnership was engaged in any activity which would constitute carrying on a trade or business. [6]
*182 Petitioners have failed to produce sufficient evidence as to the nature and extent of Springs Associates' activities during the years 1973, 1974, and 1975. While Mr. Schmidt did testify that he considered Springs Associates to be a general contractor, his testimony consisted of conclusory and self-serving statements which we do not accept as fact. See South Texas Rice Warehouse Co. v. Commissioner,366 F. 2d 890, 898 (5th Cir. 1966), affg. 43 T.C. 540 (1965), cert. denied 386 U.S. 1016 (1967). In addition, Mr. Giusti's testimony that Earl M. Walth, a partner in Springs Associates, visited Santa Fe and "supervised the purchase of these materials and services and also supervised the movement on the job," was likewise conclusory and self-serving. Absolutely no evidence was introduced as to the duration of Mr. Walth's stay in Santa Fe, the frequency of his visits, the degree of his supervision, or whether Mr. Walth was acting in his capacity as an investor on behalf of the partnership. Finally, no other evidence was produced which indicated that Springs Associates engaged in any activity, supervisory or otherwise, during the years in *183 issue. In fact, the record seems to indicate that Springs Associates was merely a passive investor that took no active role in the construction of the project. [7] Moreover, the fact that Springs Associates was not involved in the construction of any other building before, during, or after the years in issue is further evidence that Springs Associates engaged in a single transaction and was not carrying on a trade or business. Petitioners have failed to meet their burden of proof and have not established that Springs Associates was carrying on the trade or business of a general contractor, or any other trade or business during the years 1973, 1974, and 1975. Welch v. Helvering,supra. Accordingly, we hold that the cost overruns incurred by Springs Associates are not a deductible business expense under section 162. Since we found for respondent, a Rule 155 computation *184 is necessary to determine Mr. Schmidt's minimum tax liability under section 56, for his 1976 taxable year. To reflect the foregoing, Decisions will be entered under Rule 155.
Footnotes
1. The deficiency that respondent determined in Mr. Schmidt's 1976 Federal income tax results solely from the minimum tax assessed under section 56, I.R.C. 1954↩, for gain attributable to Mr. Schmidt's sale of his partnership interest. On brief, respondent concedes that the 1976 deficiency is not directly in issue, but it may be subject to a recomputation in the event we find for the respondent and deny petitioner's business expense deductions for construction cost overruns incurred by the partnership during the years 1973, 1974, and 1975.
2. All section references are to the Internal Revenue Code of 1954, as amended, and Rule references are to the United States Tax Court Rules of Practice and Procedure.↩
3. The record is unclear as to exactly how the cost overruns were calculated on a year to year basis, but since the parties have stipulated these amounts, we accept them as fact for the purposes of this opinion. See Rule 91.↩
4. See n. 3, supra.↩
5. Sec. 707(a) provides in pertinent part: If a partner engages in a transaction with a partnership other than in his capacity as a member of such partnership, the transaction shall, * * * be considered as occurring between the partnership and one who is not a partner. Also sec. 1.707-1(a), Income Tax Regs., provides in relevant part: A partner who engages in a transaction with a partnership other than in his capacity as a partner shall be treated as if he were not a member of the partnership with respect to such transaction. Such transactions include, * * * the rendering of services * * * by the partner to the partnership.↩
6. While four of the five partners of Springs Associates were employed in the construction business and arguably engaged in the trade or business of construction, their individual activity can not be imputed to the partnership entity. Madison Gas & Electric Co. v. Commissioner,72 T.C. 521, 564 (1979), affd. 633 F. 2d 512 (7th Cir. 1980). Whether or not an activity amounts to a trade or business must be determined at the partnership level. Brannen v. Commissioner,78 T.C. 471, 505↩ (1982).
7. The record indicates that Springs Associates only act was assumption of what it perceived to be a slight risk of loss, in exchange for an anticipated 7 percent profit which would be made by assigning the right to build the complex at less than the price quoted to St. Michaels.↩